24-3123 Eastern Missouri. Bliv, Inc. v. The Charter Oak Fire Insurance Company. Mr. Searcy. May it please the Court. Neat Searcy on behalf of Plaintiff Appellant Bliv, Inc. The District Court erred as a matter of law in excluding the opinions of Brian Johnson, Appellant's causation expert and forensic engineer, and in granting summary judgment to Appellee Charter Oak on that basis. Rule 702 requires that expert testimony be based on sufficient facts, employ reliable methods, and apply those methods to the facts of the case. In this circuit, expert testimony may be excluded only if it is so fundamentally unsupported in its factual basis that it can offer no assistance to the jury. This Court has repeatedly reiterated this standard and held that doubts regarding an expert's testimony should be resolved in favor of admissibility rather than exclusion. The question before this Court is whether Mr. Johnson's work was so fundamentally unsupported that it could not assist the jury. The record shows the opposite. You know, your categorical statement, I'm sure there's a quote somewhere from a distinguishable case, but our Daubert law is not that categorical. In terms of, Your Honor, you're speaking in terms of it being so fundamentally unsupported? It would have to be able to clearly add nothing of value to the jury. Of course, it has to be able to assist the trier of fact. I agree, Your Honor. Yeah, okay. Well, let's start out. Mr. Johnson's work... We review that decision for an abuse of discretion, right? That's correct, Your Honor. And so it's, you know, we have a deferential standard to the trial judge. The trial judge has made the 702 ruling. That's correct. That's where we start, right? That's correct, Your Honor. First, Mr. Johnson's methodology was reliable and consistent with Rule 702 and accepted engineering practices. He conducted a thorough on-site inspection. He was on the property for over two hours, or right around two hours. He took over 160 photographs. He noted numerous instances of observable hail damage to the soft metal components of the roofing, including the HVAC units, the vents, and the coping. He examined the roofing material and the TPO membrane itself. He noted no signs of prior extensive repairs or maintenance issues that could indicate a history of leakage. He visually and physically examined the seams and flashing of the roof and the membrane for signs of failure, but he found none. But where do you think... We've got, as noted, this is abuse of discretion. So where did the district court go wrong here? I think the district court erred in misunderstanding the testimony and finding against admissibility, or in favor of exclusion rather than admissibility. There are numerous, in our opinion, factual mistakes that are in the district court's order. For example, the district court found that Mr. Johnson did not review Vertex's supplemental report that purportedly shows a failed seam in the roofing material. He had, in fact, reviewed that report. That was true at the time of his deposition that Mr. Johnson had not reviewed it. However, when we submitted our opposition, Mr. Johnson also submitted a declaration stating that he had subsequently reviewed the supplemental report. It did not change his opinion as to the cause of the damage here. The district court also seemed to make the assertion that all of Mr. Johnson's opinions were the result of marketing materials. That specific portion comes from two sentences in Mr. Johnson's 48-page report where he notes that fiberboard is likely more susceptible to damage from hail, and that is in part based on the marketing materials, which is the only thing that the court mentions in its order. However, Mr. Johnson also testified in his deposition that that's also based on his own personal experience walking roosts of similar composition and observing it. So if I'm understanding your argument, it's mostly that you believe the district court just got some factual issues wrong about what he could testify to. I think that's part of it, Your Honor. I also believe that the district court and Appellee Charter Oak's position or their issues with Mr. Johnson's testimony go to the weight of his testimony and not its admissibility. It looks like the trial judge was concerned with the fact that, first of all, there was this failed scene piece that was overlooked perhaps initially then was addressed later more specifically, and the claim was, well, that scene doesn't explain the extent in nature of the water damage. But then, what was the expert's name? Johnson? That's correct. Mr. Johnson then admitted that he didn't know for certain how long the corrosion had been present, that he didn't do any independent testing, that there were other problems with the roof that appeared to have started in 2012 perhaps, but they don't know where that water intrusion actually started, where it came from, what happened. And it was sort of more of the whole, there was no independent testing. There's a lot of supposition and not really much scientifically verifiable. Now, that may not be a fair characterization, but I think that's kind of where the judge got. I tend to agree with you, Your Honor. It sounded as though we were mixing and matching Vertex's expert. Yeah, I am. I'm sure I'm just pulling out all these facts that the judge is looking at, throwing them all together and saying, oh, that's not helping anybody. That's correct. And there was testing done. Vertex, which was the, or Mr. Isaac Gates, who works for Vertex, who is Apelli's expert, they did moisture testing, which Mr. Johnson reviewed, had access to, and incorporated into his analysis. Yeah, but he did no independent testing himself, right? Exactly. Neither, other than the moisture testing, he did not. But what's important is there's no indication of what independent testing would have gleaned. Obviously, the court makes a big issue of there weren't interviews with employees. Mr. Johnson addresses that that's not standard. Is the district court supposed to be able to say what testing was required? Well, I don't know. I think that's what you just said. Well, I don't know if they're required to, but I do think it would be helpful in this instance, because there's no indication. Well, what? What, is the court supposed to go out and study, become a testing expert? No, Your Honor. What do you mean, then? Mr. Johnson didn't deem it necessary to do so, based on his analysis of all the factual situations that he had. And the other side's expert did? Well, the other side's expert did a moisture test, and that's the only testing that they did, and Mr. Johnson had access to that test. In terms of independent testing, that is it that was done. And as this court has held, the factual basis of an expert's opinion goes to the credibility of the testimony, not its admissibility. And going back to, so there are the factual errors that I purport the district court misunderstood and made. I also would like to point out that the district court seemed to acknowledge that there was a lack of, I guess, visual appreciation from Mr. Johnson as far as breaches in the TPO. And that's true, but what the district court seemingly ignored was that that's not uncommon and was likely to be expected. What Mr. Johnson did was he took every possible situation or possible causes of water intrusion in the building and systematically, one by one, eliminated it, based off the factual information that he had available to him, the roofing literature, the inspection that he did, and all the other facts in the case. And one by one, he eliminated it until the only explanation or cause for water intrusion that he could glean was that the TPO had been breached by hail damage at the storm date in question. This court has explicitly upheld this methodology in C&H v. Shuck, where it held that an expert opinion formed through direct observation and experiential knowledge in which systematically includes or excludes potential causation theories satisfies the reliability threshold required for admissibility. And with that, I'd like to reserve the rest of my time for rebuttal. Can I ask just one real quick question? One thing that I found in Judge Autry's decision that was a little, that just made me kind of step back and say, is that really so? And that was his determination that complete reliance on the data collected by others is insufficient to support an expert opinion. I always thought that you could have, like, hire a medical expert who does nothing but review the medical records, doesn't interview anybody, doesn't do any independent testing, but a paste on that comes in and says, I have an opinion as to whether or not the doctor's conduct meets the standard of care. And how is this any different? I mean, couldn't you have hired an expert that did nothing but rely on the previous expert testimony work that was done by someone else and just said, I disagree with the conclusion's draw from this. I think the data shows something else. I agree, Your Honor. And I think that Mr. Johnson was very clear that his opinions are not solely based on other people. Yeah, and I know that that was a disputed fact that it was just doing that. But even if he had done that, that leaves me with a big so what. And it looks like to Judge Autry that seemed to matter a lot because he said that, I agree with the defendant that you can't do that. And I'm saying, well, why not? And while not, again, it's not binding, but the refrigeration supply case that I cited to my brief is kind of a perfect example of this where a colleague of an expert is actually the one who went to inspect a property. He took photos. And then based on a conversation that the expert in that case had with the colleague and a meteorological report, he was able to reach all of his opinions. And the district court in that case didn't see an issue with there. And with that, thank you for your time. Ms. Lester? Good morning, Your Honors. May it please the Court? Go for it. My name is Alexa Lester. I represent the Apelli Charter Oak Fire Insurance Company. In this case, the district court did not abuse its discretion in excluding Johnson's expert witness opinions and testimony and report, and the court properly granted summary judgment to Charter Oak. Rule 702 was amended in late 2023 to clarify the court's gatekeeping rule. As this court noted in SPRAFCA, the medical device business services that was handed down this summer after the briefing was completed, not everything goes to weight and credibility. The gatekeeping function is to exclude the conclusory and unreliable opinions that are at issue here. The district court is in the best position to make admissibility determinations, and it did so here. And this kind of touches on what counsel argued, but Mr. Johnson starts with a conclusory assumption that the interior damages were caused by a storm. And he bases that opinion on the fact that ARS, which was Bliv's contractor, included replacement of ceiling tiles in its repair estimate. So you have a contractor who includes about 17 pictures of stained ceiling tiles, one picture of metal roof decking, and then rights to replace stained ceiling tiles, well actually all ceiling tiles, in its repair estimate. So the district court did not abuse its discretion in ruling that that was insufficient to conclude that there were interior damages caused by storms, or by this alleged storm date, and that the opinions were unreliable. Because as set forth in the record, he never inspected the interior of the property, despite being at the scene of the building. He never asked the property owner if any prior leaking issues existed. Had he done so, which was also before Judge Autry in the lower court, he would have learned that there were prior leaking issues at the property before the reported storm date. He did not ask a contractor, or speak to a contractor, interview a contractor, about why that was included in the estimate, or did not confirm whether the contractor was writing for all damage observed, or just reported storm damage. Did Brian Johnson have some answers for this? In other words, you can say on the one hand, well you didn't do this, you didn't do that, you didn't do the other thing. But it seemed to me on some of the critiques of his approach, he said, well here's why I didn't, or here's why I don't think that's important, or in my experience it doesn't help to get these kinds of records. How do you factor that in? Doesn't that then go to just sort of let the jury decide whether or not this particular expert's reasoning for his approach is believable, is credible, and can support his conclusion? Your Honor, I think if we were just talking about each complaint that Charter Oak had with Johnson's opinions, if we were talking about each complaint individually, or even just two or three, I might agree that it would go to weight and credibility. But here, when considering the totality of Johnson's opinion and the factual basis for those opinions, the district court properly found that they're not based on sufficient facts or data. An example is with the interior damage, for example, you mentioned, oh well I didn't look at the, Johnson says that he didn't look at this or he looked at, he didn't need to interview a property owner, but he repeatedly testified he could not tell me if those, he could not tell if any of those stains predated the storm date in question that he claims damaged the entire building. So he couldn't speak to a corrosion rate, he couldn't tell me if any of those stains predated the reported storm date. And the district court did not abuse its discretion in finding that was unreliable, given that he omitted and cherry picked some data that included unfavorable data. So even in the Texas first engineer report, there's a mention of there's been ceiling tiles that have been replaced. I see evidence of that, there's this, there's that. You can see they have a different texture. Johnson never brings that up, but it still assumes that all of those ceiling stains that are on these drop ceiling tiles are storm related. And there's just insufficient facts or data, or any experience that's sufficiently connected to the facts of this case to support that opinion. Why don't you spend more time on the appellate standard review? Our standard review. Established not too many years ago, maybe 20, by unanimous Supreme Court. That it's not just, it's not, yes it's abuse of discretion, but it's a unique definition of abuse of discretion. What is it? Clear and prejudicial abuse of discretion. Manifestly erroneous. Manifestly erroneous. Yeah, and there was nothing in. I mean, what's manifestly erroneous about the district court saying, you know, this guy doesn't add much? Nothing. I. I mean, that case has never been overruled or even questioned.  Correct, Your Honor. It's never. It's cited as a lead case and everybody ignores what it says. Right, but the ruling has to be manifestly erroneous. And it's. Which is about as close to the clear error standard as the Supreme Court could get. I agree. But still saying, well, it's a court reviewing a court in this kind of issue. It does appear to be an abuse of discretion category. And then they define it as virtually clear error review. Do you think we should ignore that? No. I don't think you cited Joyner. Oh, we did, Your Honor. We cited Joyner and it's in our table of authorities. No, you didn't. Well, wait a minute. General Electric. Yeah, you did. But I don't think you. You didn't focus on that terminology. Correct, Your Honor. But that is the standard is manifestly erroneous. And then this court, again, reiterated that standard in its recent decision in Spravka. So has any circuit court, to your knowledge, spent a little time dissecting what a manifestly erroneous abuse of discretion standard looks like? Not that I have found, Your Honor. Just manifest. It figures. In the dot word world, that figures. Yes. Everybody wants to talk about science they don't understand. Yes. So I think in this situation, I don't think there was anything manifestly erroneous either in the record or that the district court considered. What if the district court got a few things wrong factually? How do we factor that in? Would you agree that some of it maybe doesn't align up quite with Johnson's expert testimony or opinion? Not necessarily. I think the district court's wording was maybe a little bit confusing. But I don't think that's a manifest error because in his deposition, Johnson does testify that he relied on marketing materials. And as I argued to the district court, that this isn't a situation where he says Fiberboard X is more susceptible to hail damage. I saw evidence or what looked to be like evidence of Fiberboard X on this roof. Therefore, I believe this roof's Fiberboard X or potential Fiberboard X was more susceptible to hail damage. That would go to weight and credibility and counsel would be able to cross-examine Johnson on those opinions. But the basis for that opinion is Johnson saying, oh, I believe that this entire roof was damaged by hail and the marketing materials are included. Maybe I don't understand the question, but it seems to me what the question is really getting at is that when the district judge writes an opinion, the district judge on one of these Daubert questions, the judge makes certain findings of fact that go into that, that ultimately leads him or her to draw a conclusion. And the ultimate legal conclusion is it's in or it's out. Here, Judge Autry says it's out. The question I think that Judge Kelly was asking is, well, what if a couple of findings of fact don't seem to square with the record? And I don't think that, and the question I've got is, I'm not sure that squaring with the record is enough. Because I think that the findings of fact, that question, you revert to clear error. So that finding of fact that Judge Autry made has to be clearly erroneous. And then you've got the manifest abuse of discretion on the ultimate question, right? And so you're talking about weight and credibility and everything. And I'm saying I think that that's, in a lot of ways, that's the old fry world rather than Daubert. But in any event, what we're really looking at here is that, well, is there clear error in Judge Autry's fact findings? And I just want to ask you that. Did you see anything in this opinion on the underlying facts that are the A, B, and C that lead to the conclusion? Did you see anything there that was clearly erroneous? No, Your Honor. Okay. And I see I'm out of time. So thank you for your time today. Thank you. I'll give you a minute for rebuttal. Be sure, Your Honor.  Briefly, counsel brought up the fact that Mr. Johnson did not do any sort of investigation towards the inside of the building. However, the photos that he had were enough for him to opine in his opinion and his professional expertise that the water intrusion into the building was not some sort of long-term problem but was a more short-term thing associated with the storm date. For example, he looked at the roof decking photos and noted that the corrosion on them was on the top of the flute as opposed to the bottom of the flute, which, if they were on the bottom of the flute, it would be more indicative of a long-term problem because it was on the top of the flute. It was more indicative of a short-term problem associated with the storm. And with that, I'll note that Mr. Johnson is a forensic engineer with over 20 years of experience. He's testified in over 40 different cases, and until now he's never been excluded. The district court's order granting summary judgment in favor of Charter Oak is solely a function of Mr. Johnson's testimony being excluded. Because the exclusion was in the air, so was the granting of the summary judgment motion. Accordingly, we're asking the court to reverse the district court's order excluding Mr. Johnson and his opinions and to reverse the district court's order granting summary judgment in favor of Charter Oak. Thank you. Do you have any specific factual finding that Judge Autry made in the discussion section that you think was clearly erroneous? You know, if you just look at it, you know, kind of the date the storm occurred, that he didn't inspect the interior, that he relied on photographs, that he didn't review the maintenance records, that he didn't talk to the tenants or the people in occupancy of the building, that he made assumptions certain repairs were completed after the storm. Any of those, and it goes on and on, any of those fact findings that you think are clearly erroneous? In a sense, for example, the finding of the fact that he did not review the Vertex Supplemental Report when he did, and that was before the court, that's one. The court also is very clear. They don't, it states that his opinions are based off marketing material. It does not also, you know, it's not restricted, I guess, in that sense. And that, again, that comes from two cherry-picked portions of the 48-page report that Mr. Johnson authored. It ignores the fact that Mr. Johnson, about two lines later in his deposition, say this is also based on my personal experience when I was walking these similar routes. So those are a couple examples, Judge. Thank you. Thank you, Counsel. Any other questions? Thank you. The case has been well briefed and argued, and we will take it under advisement.